## SNEED v. YARBROUGH.

No. 20772.   Opinion Filed May 9, 1933.

Rehearing Denied July 12, 1933.

A. L. Emery, for plaintiff in error.

Thrift & Davenport and Wellington L. Merwine, for defendant in error.

BUSBY, J. The plaintiff in error, plaintiff below, prosecutes herein his second appeal in the same case from a second judgment in favor of defendant in error, defendant below, in the trial court. For the sake of convenience, the parties will be referred to as they appeared in the trial court.

The original action was commenced in the district court of Creek county, Okla., on March 30. 1922. Since it was instituted, two amended petitions have been filed. The second and last amended petition was filed in the trial court on the 11th day of September, 1928. This was after the opinion in this court dated March 15, 1926, 123 Okla. 17, 253 P. 40. Inasmuch as this second amended petition did not purport to adopt as a part thereof any of the allegations in the original petition, it constituted an abandonment thereof, and the case went to trial the second time upon the second amended petition of the plaintiff, the answer thereto by the defendant, and the reply of the plaintiff.

The action as tried the second time from which this appeal is perfected, was in the nature of ejectment. In the second amended petition the plaintiff alleged, in substance, that he was a citizen of the Creek Nation duly enrolled opposite Roll No. 10081 as a three-sixteenth Indian blood, and, that according to the enrollment record, he became 21 years of age a short time prior to June 27, 1913, and that as a citizen of the Creek Nation he received an allotment of land described as lot (3) and the N. W. 11.47 acres of lot (4) and the north 5.74 acres of the S. W. 11.48 acres of lot (4) and the E. 20 acres of lot (4) and the S. E. of the S. W. all in sec. (7), twp. 14 north. range (9) east, situated in Creek county; that the plaintiff became and now is the owner of the legal and equitable estate in fee simple in and to the land above described by virtue of the allotment deed. The plaintiff also alleged that the defendant unlawfully and without right had kept the plaintiff out of possession of the land since the plaintiff had reached his majority, and that he was entitled to the immediate possession of the land described. Plaintiff prayed judgment against the defendant decreeing him to be the owner of the fee-simple title of said lands and for possession thereof. In his second cause of action in the second amended petition, plaintiff prayed for and accounting by the defendant for the rents, crops, incomes, and profits derived from the said land during the time of defendant's possession thereof.

The answer of the defendant to the second amended petition consists of a general denial, containing, however. an admission that the land described in the petition was allotted to the plaintiff but denying specially that the plaintiff was at the time of the commencement of the action or at any subsequent time the owner of said lands. Defendant also specially pleaded that the statute of limitation barred the rights of the plaintiff to recover possession of the land. A reply was filed in behalf of the plaintiff, which was in the nature of a special denial, asserting that the statute of limitation did not bar the plaintiff's right to recover possession.

On the issues thus framed by the pleadings, the cause was tried the second time in March, 1929, to the court, both sides having waived a jury.

The testimony as disclosed by the record now before us on the second appeal is very brief. It consists of the examination of the plaintiff, Charles Sneed, Jr., who, as a witness in his own behalf, testified that he

was the grantee named in his allotment deed set out in his petition. The allotment deed was introduced in evidence as a part of his examination. When asked whether he was the owner of the real estate in question, he answered that he did not know whether he was or not; that he had been out of possession of the land since 1913, and the defendant had been in possession of the land since that time. He denied that he had ever given the defendant possession of the land or told him that he could take possession thereof. On cross-examination he admitted the execution of a quitclaim deed bearing date of November 3, 1921, purporting to convey any interest that he might have in the land in question to the defendant in this action. This testimony was objected to by the plaintiff on the theory that it was not proper cross-examination. Plaintiff also admitted the execution of a general warranty deed bearing date of the 25th day of March, 1914, purporting to convey the land in question to the defendant. This testimony was also objected to by the plaintiff on the theory that it was not proper cross-examination. On re-direct examination plaintiff undertook to prove that the deeds were procured by fraud. To the questions asked and the offer of proof in connection therewith, the defendant objected, and the objection was sustained by the trial court on the theory it was not within the issues in the case. In addition to his own testimony, the plaintiff offered to prove by the deposition of three witnesses that the reasonable market value of the land involved in the case was from $20 to $25 an acre on March 25, 1914, and that it was $50 an acre on November 3, 1921. The evident purpose of this offer was to establish that the consideration paid for each of the two deeds was grossly inadequate. The objection to this testimony was sustained. Thereafter, the plaintiff rested and the defendant demurred to the evidence. This demurrer was sustained. The action was dismissed and judgment rendered accordingly in favor of the defendant. From the judgment rendered, this second appeal is perfected. Other matters essential to the determination of the legal issues involved in this case will appear in the subsequent portions of this opinion.

In his petition in error plaintiff refers to the first trial had on January 5, 1924, wherein the trial court rendered judgment in his favor. Further, to the fact that a motion for a new trial was filed by the defendant, Yarbrough, and was overruled, and that Yarbrough gave notice of his intention to appeal to the Supreme Court. Before such appeal was perfected, however, and on March 15, 1924, the trial court sustained a motion by Yarbrough for a new trial on the ground of newly discovered evidence. From that order and judgment granting the new trial on the ground of newly discovered evidence, plaintiff, Sneed, perfected the former appeal to this court, which was cause No. 15758, and styled "Sneed v. Yarbrough," and which was decided in this court on March 16, 1926, 123 Okla. 17, 253 P. 40. That decision affirmed the judgment of the trial court, and remanded the case for a new trial. A petition for rehearing was filed and denied, and application for a leave to file a second petition for rehearing was denied.

Plaintiff in error, Sneed, in his petition in error herein, complains of the former decision of this court, alleging that the same was erroneous, and refers to the case-made and record therein. By allegation in his petition in error he undertakes to adopt the same as a part of the record in this second appeal and seeks to supplement the present record with the record in the former appeal and to have the former decision of the court reviewed and the matters involved therein readjudicated.

Plaintiff in his brief in this second appeal devotes considerable space to alleged errors in the former decisions of this court, and to a consideration of the evidence and issues therein involved. This renders it necessary that we consider: (1) The force and effect of the former decision; (2) the propriety of disturbing the same; (3) the bearing which the record in that case has upon the case involved in this appeal. In support of his position, the plaintiff calls our attention to the rule approved by this court in the case of Wade v. Hope & Killingsworth, 89 Okla. 64, 213 P. 549, as being stated in syllabus paragraph 2, reading:

"The courts uniformly hold that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision."

In considering the subsequent appeal, it is proper to investigate the record of the former appeal for the limited purpose of determining what facts and questions were

before the court on the former occasion. It was said in the case of Oklahoma City Electric Gas & Power Co. v. Baumhoff, 21 Okla. 503, 96 P. 758, in a decision written by the late Justice Kane:

"A record on a former appeal in the same action may be looked into for the purpose of ascertaining what facts and questions were before the court, so as to see to the proper application of the rule that such decision is the law of the case."

Inasmuch as we may, in a proper case, assume jurisdiction to review and reverse the former decisions of the court, we may no doubt examine the prior record for the purpose of determining the correctness of the former decision. However, this court will not disturb the former opinion, even though erroneous, unless it is satisfied that gross and manifest injustice has been done.

An examination of the former decision in this case discloses that the merits of the controversy between the parties to this litigation were not reviewed nor considered, and no rules of substantive law were announced by this court to guide or govern the trial court in the second trial. The only question determined in that appeal was whether the decision of the trial court granting a new trial on the ground of newly discovered evidence should be affirmed or reversed. The effect of that decision of this court ordering a new trial was to place the parties to the controversy in a position to have the issues again presented to the trial court. In the second trial in the court below, the plaintiff was at liberty to present all of the questions of law and of fact that were presented in the former trial. The former decision of this court did not in any way touch upon the matters in controversy except to decide that a new trial should be had. Assuming, but not deciding, that the former decision was erroneous, it cannot be said that a gross and manifest injustice was done thereby, for the obvious reason that all of the questions of fact and law presented at the former trial could have been again presented at the second trial, and, in the event of an erroneous judgment by the trial court, the questions could have been presented to this court for review on appeal.

The plaintiff in this controversy did not choose to present his case on the same pleadings in the second trial. As stated above, his second amended petition was filed subsequent to the former decision of this court. The nature of the cause of action therein relied upon was a statutory one in the nature of ejectment for the recovery of real property, with a second cause of action to recover the rents and profits during the time of the alleged wrongful possession of the premises. The first trial was had upon a prior amended petition. That petition was considerably broader in its scope, and stated, in addition to the facts necessary to entitle the plaintiff to recovery in ejectment, facts necessary to entitle the plaintiff to rescind and cancel certain deeds on the grounds that such deed had been procured by fraud. In substance, that petition alleges, in addition to the facts in connection with ejectment and accounting, that the plaintiff was a citizen of the Creek Nation; that he was allotted the land herein concerned and received an allotment deed thereto; that three deeds have been executed, each purporting to convey the title belonging to the plaintiff to the defendant in this action. The first deed mentioned being a guardian's deed which was alleged to be invalid by reason of a want of jurisdiction in the county court authorizing it to be issued. The second deed being a warranty deed which was alleged to have been fraudulently procured from the plaintiff in 1914, and the third being a quitclaim deed, alleged to have been fraudulently procured from the plaintiff in 1921.

It is apparent from a comparison of the pleadings in the first and second trials that the issues were materially different. In the first trial the petition, in effect, contained five causes of action. The first three were for the rescission and cancellation of three different deeds on the ground of fraud. The fourth cause of action was in the nature of ejectment for the recovery of the property, and the fifth for an accounting. On the second trial, the petition was confined to the causes of action in ejectment and accounting. This court has on several occasions held that a cause of action for recovery of real property is entirely different and distinct in its nature from a cause of action for the rescission and cancellation of conveyance on the grounds of fraud. Warner v. Coleman, 107 Okla. 292, 231 P. 1053; Tomlin v. Roberts, 126 Okla. 165, 258 P. 1041, and Chouteau v. Hornbeck, 125 Okla. 254, 257 P. 372.

The distinct difference in the issues in the two trials is an added reason why this is not a proper case in which to disturb a former decision of the court. It should be noted, however, that if the changes that were made in the second amended petition, changing the issues, were prompted by these

rules of law announced in the former decision, a different question might be presented.

While the record in the former appeal in this same case may be examined and considered in connection with the former decision, it will be so examined and considered only to determine the questions and facts before the court at that time, and the scope, effect, and correctness of the former decision. Such record forms no proper part of the record in this case, and cannot be considered as supplementing the record herein.

In the case of State Bank of Waterloo v. City National Bank of Kansas City, 18 Okla. 10, 89 P. 206, this court held:

"* * * The case was reversed and remanded for a new trial and we cannot consider the evidence presented by the record on the former appeal at this time, but are confined to the record now before us."

The statement above quoted was approved by this court in the case of Clark v. First Nat. Bank of Marseilles (Ill.) 157 P. 96. This rule is also stated by the Kansas court, in the case of Robins Mining Co. v. Murdock (Kan.) 93 P. 265, where the following language occurs in syllabus paragraph 1:

"Where a case has been reversed and sent back for a new trial, proceedings in the first trial are not properly made part of the record on second appeal."

Furthermore, in the record of the second trial, no effort was made to introduce the former pleadings in evidence. For that reason they constitute no proper part of the record now before us, and are not a proper subject of consideration in connection with this appeal, inasmuch as this court has previously held that a petition superseded by an amended petition is no part of the record, and cannot be considered unless introduced in evidence. Cushing Gasoline Co. v. Hutchins, 93 Okla. 13, 219 P. 408; Lewellen C. Lane v. Choctaw, Okla. & Gulf Railroad Co., 19 Okla. 324, 91 P. 883. If the pleadings thus superseded are not a proper subject of consideration, it seems even more obvious that the evidence introduced in connection therewith on a former trial cannot, unless introduced in evidence in the present case, be considered a part of the record for the purpose of passing upon the merits of the appeal taken from the judgment of the court upon the subsequent trial of the case.

Since this is not a proper case to disturb the former opinion of this court on the grounds that a gross and manifest injustice had been done, and since the record in the former appeal cannot be considered as supplementing the record in this cause, it is not necessary to consider the errors alleged to have occurred in connection with the first trial.

This brings us to the errors assigned in connection with the second trial as viewed in the light of the record now before us. The four principal assignments of error directed at the record in connection with this appeal are as follows:

"In the retrial of this case, the trial court erred in the cross-examination of the plaintiff.

"In the retrial of this case, the trial court erred in admitting in evidence as a part of the cross-examination of the plaintiff the deeds of March 25, 1914, and November 3, 1921, and in not striking said deeds from the record on motion of the plaintiff.

"In the retrial of this action, the court erred in refusing to allow counsel for the plaintiff to prove the facts in connection with the execution of the deeds of March 25, 1914, and November 3, 1921.

"In the retrial of this action, the court erred in sustaining the defendant's demurrer to plaintiff's evidence and in rendering judgment for defendant."

It should be remembered in connection with all of these assignments of error, that an action for the rescission and cancellation of a deed on the ground of fraud, and an action for the recovery of real property in the nature of ejectment, are entirely different in their character; and although they have been joined in the same action, one is not included within the other. This distinction and difference is definitely recognized in the cases of Warner v. Coleman, Tomlin v. Roberts, and Chouteau v. Hornbeck, all mentioned, supra. In the Hornbeck Case, this court held:

"The first cause of action declared upon by the plaintiff is for the cancellation of a deed procured by fraud. This is a cause of action pursuing an equitable remedy for reinvestment of legal title, and without the successful granting of which the plaintiff has neither legal nor equitable title nor the right of possession. The gravamen of the action is not one for relief as in ejectment at common law, but is one for the cancellation of a deed and seeks to cancel the deed on the ground of fraud. It invokes the equitable remedy of rescission. The determination of the right claimed by plaintiff in the premises is predicated on a cause of action in rescission. The action is one

of equitable cognizance, and not a statutory action for the recovery of specific real property, although the possession, or the right to the possession, may follow as an incident to the granting of the equitable remedy."

It is plain from the reading of the foregoing language that an action to recover real estate does not include within its scope an equitable action to rescind and cancel conveyances on the ground of fraud, and if the person who is asserting the right to recover the real estate has executed conveyances which he claims were procured by fraud, it is essential to the maintenance of his action to recover the possession of the property that he join therewith an action for the rescission and cancellation of the conveyances alleged to have been fraudulently procured. For until such conveyances are canceled, he cannot successfully recover the possession of the real estate. The plaintiff in this case admitted on cross-examination that, in 1914, he executed a warranty deed to the defendant, and that, in 1921, he executed a quitclaim deed to the defendant. On re-direct examination he offered to prove that these deeds were procured by fraud. His appropriate remedy to cancel these deeds was an action for rescission and cancellation thereof, which action is equitable in its nature. In framing his second amended petition, upon which this trial was conducted, he omitted all reference to these deeds, and abandoned his action for rescission and cancellation. Under the rule announced in the Hornbeck Case, supra, he had neither legal nor equitable title until the deeds were canceled, and he, therefore, could not maintain his action to recover the property.

The plaintiff, however, argues that it was improper to permit the defendant to inquire on cross-examination concerning the execution of these deeds. With this contention we cannot agree. The plaintiff was the only witness placed upon the stand for the purpose of establishing his own right to recover the real estate in question. On his direct examination, he testified that he was the grantee named in an allotment deed, and produced the deed which was introduced in evidence. The introduction of this deed in evidence established the fact that the plaintiff once was the owner of the legal title to the real estate. It created an inference in law that he continued to be the owner of this real estate. This inference, arising from this testimony, was as much

a part of his direct examination as any of the statements therein. The defendant was entitled upon cross-examination to destroy the force and effect of the inference to be drawn from plaintiff's testimony. This he did by producing the deeds executed and securing an admission by the plaintiff that they had been executed by him.

It is next urged that the trial court erred in refusing to permit the plaintiff to establish, or undertake to establish on re-direct examination, that the deeds in question were procured by fraud. With this contention we cannot agree, for the reason that the plaintiff in his action was not seeking to cancel the deeds, and it was essential regardless of any fraud that he establish as the basis of his action the legal or equitable title in himself. The existence of outstanding deeds deprived plaintiff of the legal and equitable title, and he could not maintain an action in ejectment, even though the deeds were obtained by fraud, until he had first canceled the deeds.

There are certain other assignments of error in the brief directed at the statute of limitations and its application to the deeds in question. However, in view of the fact that it is apparent from the record that the plaintiff was not entitled to maintain this action, we deem it unnecessary to discuss these assignments, other than to mention that in the three cases last above quoted it is definitely announced as the law of this state that an action for the rescission and cancellation of conveyances alleged to have been procured by fraud must be brought within two years after the date of the discovery of the alleged fraud. In this connection we note that these three cases have been decided since the first trial of this action in 1924, which may account for the fact that the plaintiff in his second amended petition abandoned the idea of pitching his right to recover on a cause of action seeking cancellation on the ground of fraud. Especially since this action was commenced in 1922, and the first alleged fraudulent conveyance was executed in 1914. For the reasons stated the decision of the trial court sustaining the demurrer to the evidence of the plaintiff and rendering judgment accordingly will be affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. RILEY, C. J., absent.